# Exhibit 1

**-FILED-**

NOV 10 2025

At Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

JAVIER DE JESÚS AGUILAR,⟩

Plaintiff,⟩

v.⟩ Case No. 3:25-cv-898-DRL-SJF

BRIAN ENGLISH, *et al.*,⟩

Defendants.⟩

### RESPONDENTS' RESPONSE TO PETITION FOR
### *WRIT OF HABEAS CORPUS*

Javier De Jesús Aguilar has petitioned for a *writ of habeas corpus* under 28 U.S.C. § 2241. He asks this Court to order that he be immediately released from custody or, in the alternative, given a bond hearing. The Court should deny his petition because it lacks subject matter jurisdiction. But even if the Court had jurisdiction, the Court should deny the petition because De Jesús Aguilar is lawfully detained as an "alien seeking admission" pending removal proceedings under 8 U.S.C. § 1225(b)(2), and because his detention does not violate due process.

### INTRODUCTION

De Jesús Aguilar is a Mexican citizen who entered the United States nearly two decades ago but has never been legally admitted into this country. He is thus statutorily "deemed" an "applicant for admission" because he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1). He never voluntarily sought admission into the country but was instead transferred to ICE custody after completing a state felony criminal sentence. He is currently in removal proceedings. Under 8 U.S.C. § 1225(b)(2), an applicant for admission in his position

1

"shall be detained." De Jesús Aguilar nevertheless seeks *habeas* relief from his mandatory detention while those proceedings play out before an immigration judge. His *habeas* petition should be denied for several reasons.

First, the Court lacks subject matter jurisdiction. De Jesús Aguilar's *habeas* petition directly arises from DHS's decision to commence and/or adjudicate removal proceedings against him. Sections 1252(b)(9), (e)(3), and (g) bar judicial review of such decisions.

Second, his substantive arguments lack merit. De Jesús Aguilar is lawfully detained as an "alien seeking admission" pending the adjudication of removal proceedings under section 1225(b)(2). The plain text of section 1225(b)(2) provides for mandatory detention of any alien "who is an applicant for admission." And "applicants for admission" specifically include all "alien[s] present in the United States who [have] not been admitted" or "who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). Because De Jesús Aguilar has never been admitted, he is an "applicant for admission" and thus subject to mandatory detention.

Third, the Court should reject De Jesús Aguilar's due process claim because an "arriving alien's" due process rights are coextensive with whatever process Congress chooses to provide. De Jesús Aguilar is receiving all such procedures while he remains in removal proceedings.

Finally, the Court should require that De Jesús Aguilar address his challenge to an Immigration Judge ("IJ") and from there, with the Board of Immigration Appeals ("BIA"), before addressing it to this Court. For these reasons, Respondents

2

ask that the Court deny De Jesús Aguilar's *habeas* petition and dismiss this action with prejudice.

## FACTUAL BACKGROUND

De Jesús Aguilar is a Mexican citizen who crossed into the United States at the southern border in 2006. DE # 1, ¶ 31; *see* Ex. 1 (Form I-213). He did so illegally and without inspection. *Id.* On October 30, 2013, Petitioner was served with a Notice to Appear ("NTA") charging him with removability under INA § 212 (a)(6)(A)(i) and alleging that he is an alien present in the United States who has not been admitted or paroled. *See* Ex. 2 (NTA). He has remained in removal proceedings ever since. De Jesús Aguilar has not, and does not now, allege that he presented himself to immigration officials upon arriving in the United States, that he ever made a claim to asylum before his present detention, or that he has otherwise ever been lawfully admitted into the United States.

In 2024, an Indiana state jury convicted De Jesús Aguilar of felony criminal confinement, misdemeanor domestic battery, and misdemeanor battery resulting in bodily injury[1] and the court sentenced him to a year in state prison. DE # 1, ¶31; *see* Ex. 3 (4/17/25 Sentencing Order). On October 2, 2025, after serving his criminal sentence, De Jesús Aguilar was transferred from IDOC to ICE custody. DE # 1, ¶32; Ex. 1. De Jesús Aguilar is currently detained at Miami Correctional Facility in

---

[1] Petitioner asserts that he was convicted of "a single misdemeanor offense of domestic battery" and otherwise "has no other criminal record." DE # 1, ¶ 31. That is wrong. A jury convicted Petitioner of a felony (criminal confinement under IN Code § 35-42-3-3) and two misdemeanors (which merged for sentencing purposes). *See State v. De Jesus Aguilar*, 49D07-2404-F3-009320 (Marion Cnty. Sup. Ct. 2025). Petitioner filed an appeal that remains pending. *See De Jesus Aguilar v. State*, Case No. 25A-CR-1148.

Bunker Hill, Indiana, as an "applicant for admission" pending resolution of removal proceedings. 8 U.S.C. § 1225(b)(2).

An IJ will hold a hearing in De Jesús Aguilar's case on November 10, 2025. Instead of waiting for his hearing, De Jesús Aguilar filed a *habeas* petition in this Court arguing, among other things, that his detention is unlawful under the Immigration and Nationality Act ("INA") and unconstitutional under the Fifth Amendment's Due Process Clause. De Jesús Aguilar seeks his immediate release, or instead a discretionary bond hearing[2] under 8 U.S.C. § 1226(a)).

## LEGAL STANDARD

A petition for a *writ of habeas corpus* challenges the legality or constitutionality of the government's restraint or imprisonment of the petitioner. 28 U.S.C. § 2241. A petitioner bears the burden to demonstrate that his detention is unlawful. *Walker v. Johnston*, 312 U.S. 275, 268 (1941).

## ARGUMENT

### I.    PETITIONER'S *HABEAS* CLAIMS SHOULD BE DISMISSED FOR LACK OF JURISDICTION UNDER RULE 12(b)(1).

The Court should dismiss this petition because it lacks jurisdiction over Petitioner's *habeas* claim.[3] There is no jurisdiction for this Court to review De Jesús

---

[2] Petitioner contends that he has "deep family and community ties" and is neither a danger nor a flight risk. DE # 1, ¶ 39. But according to the appeal, De Jesús Aguilar was convicted of criminal confinement and battery for an April 2024 incident against someone who had been his girlfriend for a few months.

[3] While the Court determined that it has subject matter jurisdiction under 28 U.S.C. § 2241, this Court has not yet considered whether it has subject matter jurisdiction under the applicable INA provisions.

Aguilar's challenge to DHS's decision to detain him during the pendency of his removal proceedings because his claims directly arise from DHS's decision to commence and/or adjudicate removal proceedings against him. To the extent that Petitioner challenges the interpretation or the constitutionality of the statute under which his removal proceedings are brought, he may raise that challenge in the Court of Appeals upon review of a final order of removal.

### A. Section 1252(e)(3) Bars Review of Petitioner's *Habeas* Claims

Section 1252(e)(3) deprives this court of jurisdiction, including *habeas corpus* jurisdiction, over De Jesús Aguilar's challenge to his detention under section 1225(b)(2)(A). Section 1252(e)(3) limits judicial review of "determinations under section 1225(b) of this title and its implementation" to the District Court for the District of Columbia. 8 U.S.C. § 1252(e)(3). Paragraph (e)(3) further confines this limited review to (1) whether section 1225(b) or an implementing regulation is constitutional, or (2) whether a regulation or other written policy directive, guideline, or procedure implementing the section violates the law. *See* 8 U.S.C. § 1252(e)(3)(A)(i)-(ii); *see also M.M.V. v. Garland*, 1 F.4th 1100, 1109 (D.C. Cir. 2021). Unlike other provisions within section 1252(e), section 1252(e)(3) applies broadly to judicial review of section 1225(b), not just determinations under section 1225(b)(1). *Compare* 8 U.S.C. § 1252(e)(1)(A), (e)(2), *with* 8 U.S.C. § 1252(e)(3)(A). That matters because "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v.*

5

*United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Here, De Jesús Aguilar challenges DHS's determination that aliens who entered the United States without inspection are subject to mandatory detention under section 1225(b)(2). *See, e.g.*, DE # 1, ¶ ¶2-5. De Jesús Aguilar thus seeks judicial review of a written policy or guideline implementing section 1225(b), which is covered by section 1252(e)(3)(A)(ii). Because this petition was not "instituted in the United States District Court for the District of Columbia," it should be dismissed. 8 U.S.C. § 1252(e)3)(A).

### B. Section 1252(g) Bars Review of Petitioner's *Habeas* Claims

Moreover, section 1252(g) categorically bars jurisdiction over "*any* cause or claim by or on behalf of any alien *arising from* the decision or action by the [Secretary of Homeland Security] to *commence proceedings*, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added). The Secretary of Homeland Security's decision to *commence removal proceedings*, including the decision to detain an alien pending such removal proceedings, squarely falls within this jurisdictional bar. In other words, detention clearly "aris[es] from" the decision to commence removal proceedings against an alien. *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take [plaintiff] into custody and to detain him during removal proceedings"); *see also Khorrami v. Rolince*, 493 F. Supp. 2d 1061 (N.D. Ill. 2007) ("[Plaintiff's] detention necessarily *arises from* the decision to initiate removal proceedings against him.")

6

(emphasis added). As such, judicial review of the Petitioner's claim is barred by section 1252(g).

### D. Section 1252(b)(9) Bars Review of Petitioner's Claim.

Similarly, under section 1252(b)(9), "judicial review of all questions of law...including interpretation and application of statutory provisions...arising from any action taken...to remove an alien from the United States" is only proper before the appropriate court of appeals in the form of a petition for review of a final removal order. *See* 8 U.S.C. § 1252(b)(9); *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) ("*AADC*"). Section 1252(b)(9) is thus an "unmistakable 'zipper' clause" that "channels judicial review of all" claims arising from deportation proceedings to a court of appeals in the first instance. *Id.; see Lopez v. Barr*, 2021 WL 195523, at *2 (D. Minn. Jan. 20, 2021) (citing *Nasrallah v. Barr*, 590 U.S. 573, 579–80 (2020)). This jurisdictional bar works in tandem with section 1252(a)(5), which provides that a petition for review is the exclusive means for judicial review of immigration proceedings. "Taken together, section 1252(a)(5) and section 1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see id.* at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges...whenever they 'arise from' removal proceedings"); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (similar).

7

Critically, "Section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007). Section 1252(a)(2)(D) provides that "[n]othing…in any other provision of this chapter…shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("[J]urisdiction to review such claims is vested exclusively in the courts of appeals[.]"). The petition-for-review process before the court of appeals ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their day in court." *J.E.F.M.*, 837 F.3d at 1031–32 (internal quotations omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate…Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

Section 1252(a)(5) and (b)(9) divest district courts of jurisdiction to review both direct and indirect challenges to removals. The statutes do not permit the use of *habeas* to challenge "the decision to *detain* [an alien] in the first place or to seek removal." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion) (emphasis added); *see also id.* at 314 (Thomas, J., concurring in part and concurring in the judgment) (with Justice Gorsuch, agreeing with the plurality that section 1252(b)(9) does not permit such a *habeas* petition). Yet that is precisely what De Jesús Aguilar is requesting here.

8

De Jesús Aguilar seeks to sidestep these jurisdictional bars by arguing about futility and pointing to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and specifically the BIA's finding that ICE could treat undocumented immigrants already present in the United States as arriving aliens subject to mandatory detention under section 1225(b)(2). But section 1252(b)(9) provides that "[j]udicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." (emphasis added.) It therefore bars claims "challenging the decision to detain them in the first place." *Jennings*, 583 U.S. at 294 (plurality opinion).[4] By making such a challenge, the *habeas* claims here require the Court to answer "legal questions" that arise from "an action taken to remove an alien;" thus, De Jesús Aguilar's claims "fall within the scope of § 1252(b)(9)." *Jennings*, 583 U.S. at 295 n.3 (plurality opinion); *id.* at 317 (Thomas, J., concurring in part and concurring in the judgment) (with Justice Gorsuch, agreeing that detention falls within the scope of section 1252(b)(9)'s limitation). Accordingly, the Court should dismiss the claim for lack of jurisdiction under section 1252(b)(9). Even

---

[4] *See also Jennings*, 583 U.S. at 317 (Thomas, J., concurring in part and concurring in the judgment) ("Section 1252(b)(9) is a 'general jurisdictional limitation' that applies to 'all claims arising from deportation proceedings' and the 'many decisions or actions that may be part of the deportation process.' Detaining an alien falls within this definition—indeed, this Court has described detention during removal proceedings as an 'aspect of the deportation process.' . . . The phrase 'any action taken to remove an alien from the United States' must at least cover congressionally authorized portions of the deportation process that necessarily serve the purpose of ensuring an alien's removal." (alterations and citation omitted) (quoting *AADC*, 525 U.S. at 482–83; *Kim*, 538 U.S. at 523; and 8 U.S.C. § 1252(b)(9))).

9

if the De Jesús Aguilar anticipates that he would disagree with the IJ's legal reasoning, he must present his claim to the BIA and then to the appropriate court of appeals, not this Court. *See* 8 U.S.C. § 1252(b)(9).

## II.    THE COURT SHOULD DISMISS THE PETITION BECAUSE PETITIONER IS PROPERLY DETAINED UNDER 8 U.S.C. § 1225.

Jurisdiction aside, the heart of this dispute centers on statutory interpretation, namely section 1225. "As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)); *see also, e.g.*, *Southwest Airlines v. Saxon*, 596 U.S. 450, 457 (2022) ("As always, we begin with the text."). And "[i]f the statutory language is plain, [courts] must enforce it according to its term." *King v. Burwell*, 576 U.S. 473, 486 (2015).

The plain text of the INA mandates that De Jesús Aguilar—who is present in the United States without being admitted—is correctly considered an "applicant for admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Jennings*, 583 U.S. at 297 ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants of admission until certain proceedings have concluded."). De Jesús Aguilar is thus properly detained under section 1225(b)(2) because he unambiguously falls within the statute's scope. And if any doubt remained, the structure and history of the statute dispel it by providing contextual support for Respondents' plain-text interpretation.

## A. Section 1225 Applies to All "Applicants for Admission."

Section 1225 governs the inspection, detention, and removal of aliens seeking admission into the United States. It specifically defines which aliens are deemed "applicants for admission." It provides (among other things) detailed procedures for handling them, including an expedited removal process, an asylum process, and detention requirements. *See, e.g.*, 8 U.S.C. § 1225(b)(1)(A)–(B). And it includes specific detention requirements for "an alien who is an applicant for admission." *Id.* § 1225(b)(2)(A).

### 1. Section 1225(a): Defining "Applicants for Admission"

Section 1225(a)(1) specifically defines the term "applicant for admission." In relevant part, it says that any "alien present in the United States who has not been admitted . . . shall be deemed . . . an 'applicant for admission.'" *Id.* Under its plain terms, all unadmitted aliens in the United States are "applicants for admission," regardless of their proximity to the border, the length of time they have been present here, or whether they ever had the subjective intent to properly apply for admission. *See id.*; *see also Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (cleaned up) ("When a statute includes an explicit definition, [courts] must follow that definition . . ."). Thus, under the plain text of the statute, De Jesús Aguilar is unambiguously an "applicant for admission" because he is a non-citizen, he was not admitted, and he was present in the United States when he was apprehended by ICE.

11

### 2. Section 1225(b): Mandatory Detention of "Applicants for Admission."

The Supreme Court has explained that "applicants for admission fall into one of two categories, those covered by section 1225(b)(1) and those covered by section 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(1) applies to aliens who are "determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," while section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Ibid*. Applicants for admission who fall under section 1225(b)(1) are subject to expedited removal proceedings and "shall be detained" until removed (or until the end of asylum or credible-fear proceedings). 8 U.S.C. §§ 1225(b)(1)(B)(ii), (iii)(IV). Applicants for admission under section 1225(b)(2) do not face expedited removal but are subject to removal proceedings in the ordinary course pursuant to section 1229a. Significantly, the statute mandates that subsection (b)(2) applicants for admission also "shall be detained" for the pendency of their removal proceedings. 8 U.S.C. § 1225(b)(2)(A) ("an alien who is an applicant for admission" "*shall be detained* for a proceeding under [8 U.S.C. § 1229a]" "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted.") (emphasis added); *see also* 8 C.F.R. § 235.3(b)(3) (providing that an alien placed into section 1229a removal proceedings in lieu of expedited removal proceedings under section 1225 "shall be detained" pursuant to 8 U.S.C. § 1225(b)(2)); 8 C.F.R. § 235.3(c) (providing that "any arriving alien…placed in

12

removal proceedings pursuant to [8 U.S.C. § 1229a] shall be detained in accordance with [8 U.S.C. § 1225(b)]" unless paroled pursuant to 8 U.S.C. § 1182(d)(5)).

Again, De Jesús Aguilar is properly classified as an "applicant for admission" under section 1225(b)(2). He entered the country without inspection, has never been admitted, has been here for several years, and is applying to remain in the United States indefinitely. *See* DE # 1, p. 42, 77-78 (referencing his pending I-130 petition). De Jesús Aguilar has instead been placed in full removal proceedings where he will receive the benefits of the procedures (motions, hearings, testimony, evidence, and appeals) provided in § 1229a. *See* Ex. 1, 2. Congress has mandated that he "shall be detained for a proceeding under section 1229a" like the one in which he is currently involved. 8 U.S.C. § 1225(b)(2). Thus, his current detention at Miami Correctional Facility, and continued detention during his removal proceedings, is not only lawful—it is statutorily mandated. This Court should therefore dismiss this petition.

### B. Petitioner's Interpretation of Section 1225 is at Odds with both Text and Context

De Jesús Aguilar points to language in section 1225(b)(2) that refers to aliens who are "seeking admission." He parses the verb tense to argue that the use of the present tense means that it was intended to apply only to aliens who arrive and are being detained at the border. This interpretation is misguided. Section 1225(b)(2) applies to "the case of an alien who is an applicant for admission." Nowhere does it impose temporal or geographic limits on the applicants for admission to which it applies—it just applies to any "alien who is" one. 8 U.S.C. § 1225(b)(2). The term "alien seeking admission," meanwhile, is "best read as simply another way of

13

referring to aliens who are applicants for admission." *Rojas v. Olsen*, 2025 WL 3033967, at *8 (E.D. Wis. Oct. 30, 2025). Thus, De Jesús Aguilar asks the Court to place limitations on section 1225 that do not appear in the text of the statute. *Id.*

De Jesús Aguilar points to the meaningful-variation canon to suggest that Congress injected the phrase "alien seeking admission" in a purposeful effort to narrow the scope of section 1225(b)(2). *See e.g.*, DE # 1, p. 40-41, 43, 51-52. But the force of this type of inference "depends on context," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017) (cleaned up), and "may be displaced by other [interpretive] tools" pointing the other way, *Grand Trunk W. R.R. Co. v. U.S. Dep't of Labor*, 875 F.3d 821, 825 (6th Cir. 2017). And all the interpretive tools cut against De Jesús Aguilar's interpretation of "seeking admission."

One such tool is structural analysis, which favors interpretations that harmonize different sections of a statute. *See, e.g.*, *Abramski v. United States*, 573 U.S. 169, 179 (2014). Respondents' interpretation better harmonizes section 1225. Section 1225(b)(2)'s close neighbor, section 1225(a)(3), is instructive. It says that all aliens "who are applicants for admission or otherwise seeking admission" must be inspected by immigration officers. 8 U.S.C. § 1225(a)(3). The provision makes plain that those who are "applicants for admission" are themselves aliens "seeking admission." *Id.* And that understanding explains why Congress felt free to use the latter phrase as a synonym for the former in section 1225(b)(2).

Other contextual clues buttress this interpretation. BIA has long recognized that "many people who are not actually requesting permission to enter the United

14

States in the ordinary sense are nevertheless deemed to be 'seeking admission' under immigration laws." *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 (BIA 2012). According to BIA, the phrase "seeking admission" in section 1225(b)(2)(A) must be read in the context of "applicant for admission" in section 1225(a)(1). Applicants for admission include arriving aliens and foreign nationals present without admission. *See* 8 U.S.C. § 1225(a)(1). Both are understood to be "seeking admission" under §1225(a)(1). *See Lemus-Losa*, 25 I. & N. at 743. Again, this understanding suggests that "seeking admission" should be read as simply another way of referring to aliens who are "applicants for admission." *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (noting that "longstanding practice of government . . . can inform a court's determination of what the law is" (cleaned up)).

De Jesús Aguilar's argument—that "seeking admission" strictly refers to present tense—also fails on the facts. De Jesús Aguilar acknowledges that he has pending I-130 application in the immigration court. *See* DE # 1, p. 42, 77-78. Indeed, if the Court limits "seeking admission" under section 1225(b)(2) to those presently seeking authorization to remain in this country, De Jesús Aguilar still falls under this definition.

Finally, this Court should reject De Jesús Aguilar's contention that Respondents' interpretation of section 1225(b)(2) renders section 1226 "superfluous." DE # 1, p. 47, 49-50. De Jesús Aguilar argues that section 1226(a)'s discretionary framework, coupled with section 1226(c)'s specific categories for mandatory detention, show that Congress did not intend all aliens apprehended in the interior

to be subject to mandatory detention under section 1225(b). But the INA does not render these two provisions mutually exclusive, and there are many other categories of aliens to whom section 1226(a) is applicable, but not section 1225(b)(2). For one, aliens who overstay their visas fall under section 1226(a), not section 1225(b)(2). In fact, this was precisely the case in *Jennings*. There, Alejandro Rodriguez, a lawful permanent resident for several years, was convicted of a drug offense and then detained under section 1226. *Id.* at 289–90. Rodriguez was not an inadmissible alien nor an "applicant for admission"—he was an admitted alien, though one who faced removal due to his actions. Thus, Rodriguez's case discussed in *Jennings* is a paradigmatic example of an admitted alien who is not an "applicant for admission" but who subsequently became subject to removal under § 1226(a).

Ultimately, the plain text of section 1225(b)(2) makes clear that De Jesús Aguilar is alien "applicant for admission" and subject to mandatory detention during the duration of his removal proceedings. Accordingly, the Court should dismiss this petition.

### C. To the Extent it Matters, Legislative History Supports Respondents' Interpretation of Section 1225

Given that the statutory text is clear, the Court need not consider legislative history. *See Mohamad v. Palestinian Authority*, 566 U.S. 449, 459 (2012) ("Indeed, although we need not rely on legislative history given the text's clarity, we note that the history only supports our interpretation... ."). But to the extent it does, the history further supports Respondents' interpretation.

16

Congress enacted both 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1226(a) as part of the IIRIRA in 1996. Before passage of that act, the INA only provided for inspection of aliens when they arrived at ports of entry. *See* former 8 U.S.C. § 1225(a) (1994). If, after inspection, immigration officers at a port of entry determined the alien was inadmissible, they would be placed into "exclusion" proceedings and were subject to mandatory detention. *See* former 8 U.S.C. § 1182(d)(5) (1994). In contrast, aliens who illegally entered the United States and were later discovered were placed into "deportation" proceedings and were eligible to request release on bond. *See* 8 U.S.C. § 1252(a)(1) (1994).

This structure led to an incongruous result: aliens who had lawfully appeared at a port of entry for inspection but were deemed inadmissible were ineligible for release on bond, while those who surreptitiously entered the country without inspection were entitled to request release on bond. *See Hurtado*, 29 I.&N. Dec. 216, (discussing statutory history); *see also Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010) ("This so-called 'entry doctrine' resulted in an anomaly. Under this regime, non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings."); *Chavez*, 2025 WL 2730228, at *4 ("Prior to IIRIRA, an 'anomaly' existed 'whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully.") (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)).

17

Congress evidently found this unintended and undesirable result to be unacceptable. It amended the INA through the IIRIRA to replace the previous term "entry" with the term "admission" and to replace the former "exclusion" and "deportation" proceedings with more general "removal" proceedings. *See Martinez v. Att'y Gen. of the U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012). The House Report on the IIRIRA explained Congress's logic as follows:

> This subsection is intended to replace certain aspects of the current "entry doctrine," under which illegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry. Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted.

H.R. Rep. No. 104-469(I), 1996 WL 168995, at 225 (Leg. Hist. Mar. 4, 1996).

De Jesús Aguilar seeks to undo Congress's deliberate legislative choice by engrafting geographic and/or temporal limitations onto the definition of "applicants for admission" provided in 8 U.S.C. § 1225(a)(1). If successful, he would effectively restore the former immigration regime that Congress determined was unacceptable. *Cf. Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining that Congress's addition of 8 U.S.C. § 1225(a)(1) "ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission'"). As shown in this case, De Jesús Aguilar's interpretation would afford aliens who illegally enter the country and evade detection by immigration officers greater procedural protections than those available to aliens who lawfully present themselves for inspection at a port of entry. Yet such a counterintuitive and unjust

18

result is belied by the plain text of the statute and is not the policy enacted into law by Congress.

De Jesús Aguilar also points to the recent passage of the Laken Riley Act, Pub. L. No. 119-1, January 29, 2025, 139 Stat. 3 (2025) ("LRA"), arguing that the LRA indicates that section 1225(b)(2)(A) cannot mean what it says because its specification provisions of mandatory detention for foreign nationals charged with certain crimes would be redundant. See DE # 1. P. 50. But nothing in the LRA changes the analysis outlined above. Redundancies in statutory drafting are "common . . . sometimes in a congressional effort to be doubly sure." *Barton v. Barr*, 590 U.S. 222, 239 (2020). The LRA arose after an inadmissible alien "was paroled into this country through a shocking abuse of that power." 171 Cong. Rec. H278 (daily ed. Jan 22, 2025) (statement of Rep. McClintock). Congress passed it out of a specific concern that the executive branch "ignore[d] its fundamental duty under the Constitution to defend its citizens." 171 Cong. Rec. at H269 (statement of Rep. Roy). Based on this concern, "Congress . . . simply intended to remove any doubt" as to the propriety of mandatory detention pending removal proceedings. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226 (2008).

Indeed, one member of Congress even expressed frustration that "every illegal alien is currently required to be detained by current law throughout the pendency of their asylum claims," but nothing was being done by the Executive to give effect to the statutory language. 171 Cong. Rec. at H278 (statement of Rep. McClintock). The LRA thus reflects a "congressional effort to be doubly sure" that such unlawful aliens

19

are detained. *Barton*, 590 U.S. at 239. And the LRA does not change what Congress intended in IIRIRA. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) ("These later-enacted laws, however, are beside the point. They do not declare the meaning of earlier law... or a change in the meaning of an earlier statute."); *see also S. Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) ("'[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" (quoting *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 348–349 (1963))). In short, nothing in the LRA requires that a foreign national who falls under § 1225(b)(2) be treated as if they are detained under § 1226(a). *Yajure-Hurtado*, 29 I. & N. Dec. at 221–22.

## D. There Is No Consensus Among the District Courts

Finally, De Jesús Aguilar cites numerous district courts that have ruled that section 1225(b)(2) would not apply to him, suggesting some sort of consensus understanding of the statute has emerged in his favor. However, none of those decisions arise from this District or are binding upon this Court, which can engage in its own statutory analysis. Moreover, is important to note that a growing number of courts have agreed with Respondents' interpretation of 8 U.S.C. § 1225(b)(2). *See Chavez v. Noem*, — F. Supp. 3d —, 2025 WL 2730228, at \*4–5 (S.D. Cal. Sept. 24, 2025); *Pena v. Hyde*, No. 25-cv-11983, 2025 WL 2108913, at \*2 (D. Mass. July 28, 2025) ("Because petitioner remains an applicant for admission, his detention is authorized so long as he is 'not clearly and beyond doubt entitled to be admitted' to the United States." (quoting 8 U.S.C. § 1225(b)(2)(A))); *see also Florida v. United*

20

*States*, 660 F. Supp. 3d 1239, 1274–75 (N.D. Fla. 2023); *Rojas*, 2025 WL 3033967; *Sandoval v Acuna*, 2025 WL 3048926, at *1 (W.D. La. Oct. 31, 2025). These opinions faithfully applied the plain text of section 1225, as informed by the statute's context, to hold that aliens like Petitioner shall be detained.  This Court should do the same.

### III.    PETITIONER'S DETENTION DOES NOT VIOLATE DUE PROCESS

Petitioner's due process claim fails because he admittedly never effected a lawful entry. *See Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (holding that, despite nine years of physical presence on parole, a foreign national "was still in theory of law at the boundary line and had gained no foothold in the United States"). Without a lawful entry or admission, he has no more due process rights than what processes Congress chooses to provide him. *See DHS v. Thuraissigiam*, 591 U.S. 103, 114, 139–40 (2020); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative"); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process[.]"); *cf. also Licea-Gomez v. Pilliod*, 193 F. Supp. 577, 580 (N.D. Ill. 1960) ("Nor does the fact that the excluded alien is paroled into the country . . . change his status or enlarge his rights. He is still subject to the statutes governing exclusion and has no greater claim to due process than if he was held at the border.").

To this end, the Supreme Court has also long applied the so-called "entry fiction" that all "aliens who arrive at ports of entry…are treated for due process

purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139. Indeed, that is so "even [for] those paroled elsewhere in the country for years pending removal." *Id.* This fiction applies to Petitioner, who never lawfully entered the country.

Indeed, Supreme Court precedents indicate that aliens who entered illegally by evading detection while crossing the border should be treated the same as those who were stopped at the border in the first place. *See id.* at 138–40. While courts have held that aliens who have been *admitted* may claim due-process protections beyond what Congress has provided even when their legal status changes (such as a foreign national who overstays a visa, or is later determined to have been admitted in error), *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–50 (1950), the Supreme Court has never held that aliens who have "entered the country clandestinely" are entitled to such additional rights, *see Yamataya v. Fisher*, 189 U.S. 86, 1000 (1903). Congress has instead codified this distinction by treating all aliens who have not been admitted—including unlawful entrants who have evaded detection for years—as "applicants for admission" and subscribing processes applicable to all of them. 8 U.S.C. § 1225(a)(1). In line with these cases, Congress created a detention system where applicants for admission, including those who entered the country unlawfully, are detained for removal proceedings under § 1225 and foreign nationals who have been admitted to the country are detained under § 1226.

In this case, Petitioner admittedly entered the country without inspection. At this point, he has been given notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, and

has the right to appeal the denial of any request for bond. The fact that he does not want to appeal any potentially adverse bond order by an immigration judge through the procedures provided to him by Congress does not make those procedures constitutionally deficient.  *See Thuraissigiam*, 591 U.S. at 138–40.  Instead, Petitioner's only plausible challenge to his detention is that he is detained under the wrong statute (he is not), which would make his detention unlawful, but it would not make it unconstitutional.  *See id.*; *cf. also Al-Shabee v. Gonzales*, 188 F. App'x 333, 339 (6th Cir. 2006) (unpublished) (Petitioner's "disagreement with the Immigration Judge's order, however, does not constitute a violation of the Due Process Clause").  Therefore, the court should reject De Jesús Aguilar's due process claim.

## IV. THE COURT SHOULD REQUIRE ADMINISTRATIVE EXHAUSTION.

Finally, when Congress has not imposed a statutory administrative exhaustion requirement, "sound judicial discretion governs" whether exhaustion should be required.  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see also Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).  The exhaustion doctrine both allows agencies to apply their special expertise in interpreting relevant statutes and promotes judicial efficiency. *Id.* Here, this Court should require that De Jesús Aguilar at least attempt to request bond before an immigration judge, or appeal any denial of bond to the BIA, before considering the merits of his claims here.  *See, e.g., Al-Siddiqi v. Nehls*, 521 F. Supp. 2d 870, 876–77 (E.D. Wis. 2007).

De Jesús Augilar argues that any attempt to exhaust would be futile because the IJ would simply deny his request for bond under *Hurtado* and *Matter of Q. Li*. But it is not certain how the IJ would apply those decisions to Petitioner, nor is it

certain how the BIA and then the Seventh Circuit would respond to the IJ's application of those cases. Congress has provided a robust administrative hearing and appeal process for aliens in removal proceedings that include evidentiary hearings, motion practice, and appeals. *See* 8 U.S.C. § 1229a; 8 C.F.R. § 236.1(d)(3). Requiring De Jesús Aguilar to exhaust that process before seeking review in federal court may reduce the number of similar cases filed in this court.

## CONCLUSION

For the foregoing reasons, the Court should deny the petition.

Respectfully submitted,

M. SCOTT PROCTOR
Acting United States Attorney

/s/ Brian W. Irvin
BRIAN W. IRVIN
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
T: (219) 937-5500
F: (219) 852-2770
Brian.Irvin@usdoj.gov
Counsel for Respondents

24

**U.S. Department of Homeland Security**     Subject ID : 400285344     **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|---|---|
| DE JESUS AGUILAR, JAVIER | | | | | | M | BLK | BRO | MBR |

| Country of Citizenship | Passport Number and Country of Issue | File Number INP2610000008 205 830 359 | Height 67 | Weight 160 | Occupation UNEMPLOYED |
|---|---|---|---|---|---|
| MEXICO | | | | | |

| U.S. Address | Scars and Marks |
|---|---|
| 837 N LASALLE ST INDIANAPOLIS, INDIANA, 46201, | See Narrative |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☐ Single |
|---|---|---|---|
| 07/05/2006 Unknown Time, NOG, WI-Without Inspection | | 3 | ☐ Divorced ☐ Married ☐ Widower ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| NO KNOWN FOREIGN ADDRESSMEXICO | CA |

| Date of Birth | | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|---|
| 10/31/1990     Age: 34 | | 10/02/2025 | INP/CHI | See I-831 | 10/02/2025 12:02 |

| City, Province (State) and Country of Birth | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| MEXICO | | | J 9614 KAMELY-MELLIN |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | | |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | See Narrative |

| Name , Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | 1-UNITED STATES |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| GUILLERMO NATIONALITY: MEXICO | AGUSTINA NATIONALITY: MEXICO |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) |
|---|---|---|---|
| None Claimed | | | See Narrative |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| | Unemployed or Retired | Hr | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN: 19791019          Left Index fingerprint          Right Index fingerprint

SCARS MARKS AND TATTOOS
----------------------------------
None Indicated - NONE INDICATED


IMMIGRATION RECORD
----------------------
History was expected but not provided

Subject Health Status ...(CONTINUED ON I-831)

| Alien has been advised of communication privileges | (Date/Initials) | (Signature and Title of Immigration Officer) J 9614 KAMELY-MELLIN DO |
|---|---|---|

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| AFILE | Officer: J 9614 KAMELY-MELLIN |
| SUPERVISOR | on: October 2, 2025          (time) |
| | Disposition: Other |
| RECORDS | Examining Officer:     BURCHALL, L. 4764 |

Form I-213 (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| DE JESUS AGUILAR, JAVIER | 205 830 359<br>Event No: INP2610000008 | 10/02/2025 |

```
------------------------
The subject claims good health.

Current Administrative Charges
------------------------------------
10/02/2025 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)


RECORDS CHECKED
-----------------
CIS Pos
EARM Pos
TECS Pos
NCIC Neg
CLAIM Neg


FUNDS IN POSSESSION
--------------------
United States Dollar 179.51


AT/NEAR
--------
PLAINFIELD, INDIANA

Record of Deportable/Excludable Alien:
-------------------------------------------
ENCOUNTER:
The administrative arrest documented in this Record of Deportable/Inadmissible Alien, Form
I-213, was effectuated pursuant to a Warrant for Arrest, Form I-200, or Warrant for Removal,
Form I-205, signed prior to the arrest.

SYNOPSIS:
On March 19, 2025, Javier DE JESUS-Aguilar, a citizen and national of Mexico hereafter
referred to as "DE JESUS-Aguilar," was encountered at Indiana Department of Corrections
(IDOC), in Plainfield, Indiana (IN) after being in custody due to the recent detention for
state charges.  Record checks were conducted which indicated DE JESUS-Aguilar was amenable
to enforcement action.  An Immigration and Customs Enforcement (ICE) detainer was then
lodged on DE JESUS-Aguilar with Indiana Department of Corrections (IDOC), in Plainfield,
Indiana (IN).

DE JESUS-Aguilar openly acknowledged his citizenship of Mexico and admitted to lacking
proper immigration documentation permitting his presence or residency in the United States.

On October 2, 2025, DE JESUS-Aguilar was transferred to ICE custody at Plainfield
Correctional Facility, in Plainfield, IN, for further processing and detention.

Alienage:
DE JESUS-Aguilar is a citizen and national of Mexico by birth. He does not assert any claim
to U.S. citizenship.

FAMILY / DERIVATIVE CITIZENSHIP:
DE JESUS-Aguilar's parents are/were citizens and nationals of Mexico. DE JESUS-Aguilar does
not possess legitimate U.S. citizenship claims or derivations thereof.
```

| Signature | Title |
|---|---|
| J 9614 KAMELY-MELLIN | DO |

                                                                    2   of   4   Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**

**Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| DE JESUS AGUILAR, JAVIER | 205 830 359<br>Event No: INP2610000008 | 10/02/2025 |

IMMIGRATION HISTORY:
DE JESUS-Aguilar was on October 26, 2006, arrested by the United States Border Patrol and Voluntarily Removed to Mexico.

DE JESUS-Aguilar was on October 30, 2006, arrested by Indianapolis ICE / ERO and served a Notice to Appear under alien registration number 205 830 359 and released on a $5,000 bond the same day while pending removal proceedings.

DE JESUS-Aguilar I-130, Petition for Alien Relative, was received by USCIS on February 7, 2024.

On April 9, 2024, was brought back into ICE custody due to local charges, and ultimately released on a $7500 bond on May 10, 2024.
On October 2, 2025, DE JESUS-Aguilar was processed as a back in custody and his $7500 bond was cancelled and a notification was made to OPLA to re-calendar immigration proceedings under A 205 830 359.

Number of VR's: 1
Number of Removals: 0
Issued Notice to Appear on October 30, 2013.

CRIMINAL HISTORY:
DE JESUS-Aguilar's criminal history includes the following charges:

DE JESUS-Aguilar was on April 8, 2008, convicted of Public Intoxication at the Marion County Superior Court of Indianapolis, Indiana, and sentenced to 180 days in jail. Case# 49F19-0803-CM-060465

DE JESUS-Aguilar was on September 25, 2013, convicted of Operating a Vehicle while Intoxicated at the Marion County Superior Court of Indianapolis, Indiana, and sentenced to 365 days in jail. Case# 49F19-1306-CM-039273

DE JESUS-Aguilar was on December 5, 2013, convicted of Operating a Vehicle Never Received a License at the Marion County Superior Court of Indianapolis, Indiana. Case# 49F13-1307-CM-048598

DE JESUS-Aguilar was on March 5, 2017, arrested by the Martinsville Police Department for Driving while Suspended and subsequently convicted.

DE JESUS-Aguilar was convicted by Marion Superior Court on April 17, 2025, for Count IV Criminal Confinement where a vehicle was used, in violation of IC 35-42-3-3(a), a level 5 felony, sentenced to 365 days; Count VII Domestic Battery, in violation of IC 35-42-2-1.3(a)(1), a class A misdemeanor, sentenced to 365 days.
Case No. 49D07-2404-F3-009320.

***NO CONTACT ORDER in place for Candelaria SALAZAR-Perez***

Records checks for outstanding wants, warrants, and lookouts were negative for outstanding warrants.

PROCESSING:
DE JESUS-Aguilar was interviewed, fingerprinted, and photographed at the Indianapolis, IN ICE/ERO Office. DE JESUS-Aguilar was processed as Other - Back in Custody due to current and active notice to appear on file.

BASIS FOR REMOVAL:
DE JESUS-Aguilar appears amenable to 212(a)(6)(A)(i) of the Immigration and Nationality Act,

| Signature | Title |
|---|---|
| J 9614 KAMELY-MELLIN | DO |

3 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| DE JESUS AGUILAR, JAVIER | 205 830 359<br>Event No: INP2610000008 | 10/02/2025 |

as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

Equities in the United States/Family Information:
DE JESUS-Aguilar claims to be single with one minor USC child.

HEALTH & HUMANITARIAN:
DE JESUS-Aguilar appears in good health and does not claim to have any serious medical conditions.

MILITARY SERVICE / SCHOOL ATTENDANCE:
DE JESUS-Aguilar makes no claim to prior U.S. military service or school attendance in the U.S.

DISPOSITION:
DE JESUS-Aguilar will be remanded into custody due to active notice to appear and felony charges and detained within Marion County Justice Center, Indianapolis, IN.

MONEY:
DE JESUS-Aguilar has a check for $179.51 within his property from IDOC.

CONSULAR NOTIFICATION:
DE JESUS-Aguilar was notified of his right to communicate with a Consular Officer from his country as per Article 36(1)(b) of the Vienna convention on Consular Relations. DE JESUS-Aguilar indicated that he understood this right but declined to speak with anyone at this time.

PHONE CALL:
At the office, DE JESUS-Aguilar was offered free use of the telephone.  DE JESUS-Aguilar refused to use the phone.

Other Identifying Numbers
-----------------------------
ALIEN-205830359
State Criminal Number/State Bureau Number-IN01609648  (UNITED STATES)
Other Biometric-19791019
..COMMENT: FIN
Inmate Number - State Prison-305227  (UNITED STATES)

| Signature | Title |
|---|---|
| J 9614 KAMELY-MELLIN | DO |

4 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**

## Notice to Appear

### In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID : 347984009    FIN #: 19791019    File No: A205 830 359

DOB: 10/31/1990    Event No: INP1410000153

In the Matter of:

Javier DE JESUS-Aguilar

Respondent: _____ currently residing at:

DHS / ICE 101 W. CONGRESS PARKWAY , CHICAGO ILLINOIS 60605

(312) 347-2400

(Number, street, city and ZIP code)    (Area code and phone number)

☐ 1. You are an arriving alien.

☒ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:
1. You are not a citizen or national of the United States;
2. You are a native of MEXICO and a citizen of MEXICO;
3. You arrived in the United States at or near Unknown Place, on or about unknown date;
4. You were not then admitted or paroled after inspection by an Immigration Officer or at that time you arrived at a time or place other than as designated by the Attorney General.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution

☐ Section 235(b)(1) order was vacated pursuant to: ☐8CFR 208.30(f)(2) ☐8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
OFFICE OF THE IMMIGRATION JUDGE 525 W. Van Buren St. Chicago ILLINOIS US 60607

_____

(Complete Address of Immigration Court, including Room Number, if any)

on a date to be set    at a time to be set    to show why you should not be removed from the United States based on the

(Date)    (Time)

charg(s) set forth above.    J 1229 KOREN    SDDO

(Signature and Title of Issuing Officer)

Date: October 30, 2013    Indianapolis, Indiana

(City and State)

See reverse for important information

Form I-862 (Rev. 08/01/07)

**Notice to Respondent**

Warning: Any statement you make may be used against you in removal proceedings.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing**: At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to one of the offices listed in 8 CFR 241.16(a). Specific addresses on locations for surrender can be obtained from your local DHS office or over the internet at http://www.ice.gov/about/dro/contact.htm. You must surrender within 30 days from the date the order becomes administratively final, unless you obtain an order from a Federal court, immigration court, or the Board of Immigration Appeals staying execution of the removal order. Immigration regulations at 8 CFR 241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Act.

---

**Request for Prompt Hearing**

To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge.

Before:

_____
(Signature of Respondent)

---

**Certificate of Service**

This Notice To Appear was served on the respondent by me on October 30, 2013, in the following manner and in compliance with section 239(a)(1)(F) of the Act.

[x] in person      [ ] by certified mail, returned receipt requested      [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____ Spanish _____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          K 6388 WIES          _____
(Signature of Respondent if Personally Served)                                    DEPORTATION OFFICER
                                                                                  (Signature and Title of officer)

EOIR - 2 of 2

Form I-862 Page 2 (Rev. 08/01/07)



F I L E D
April 17, 2025
CLERK OF THE COURT
MARION COUNTY
MC



**STATE OF INDIANA**
**COUNTY OF MARION**

**SENTENCING ORDER**

| Case Name | | Case Number | Court | |
|---|---|---|---|---|
| State of Indiana  v.  JAVIER DE JESUS AGUILAR | | 49D07-2404-F3-009320 | Marion Superior Court 7 | |
| **Judicial Officer** | **Prosecutor** | | **Defense Attorney** | |
| Schneider, Joel - MAG | Julia Foyal Frandsen-DeLoach | | Tarek Mercho | |
| **Date of Offense** | **Date of Sentencing** | **TCN Number** | | **Gallery Number** |
| 04/01/2024 | 04/17/2025 | 4920243901 | | 000000649402 |

The Defendant was charged with the following crimes, resulting in the following Dispositions under the above-referenced cause:

| PART I | CHARGES | | | |
|---|---|---|---|---|
| **COUNT** | **CRIME** | **GOC** | **STATUTORY CITATION** | **DISPOSITION** |
| I | 35-42-3-2(a)/F3: Kidnapping while armed with a deadly weapon | | 35-42-3-2(a) | Finding of Not Guilty |
| II | 35-42-3-2(a)/F5: Kidnapping where committed by using a vehicle | | 35-42-3-2(a) | Finding of Not Guilty |
| III | 35-42-3-3(a)/F3: Criminal Confinement while armed with a deadly weapon | | 35-42-3-3(a) | Finding of Not Guilty |
| IV | 35-42-3-3(a)/F5: Criminal Confinement where a vehicle is used | | 35-42-3-3(a) | Finding of Guilty |
| V | 35-45-2-1(a)(4)/F5: Intimidation: Where def. draws or uses a deadly weapon | | 35-45-2-1(a)(4) | Finding of Not Guilty |
| VI | 35-47-4-3(b)/F6: Pointing a Firearm at Another | | 35-47-4-3(b) | Finding of Not Guilty |
| VII | 35-42-2-1.3(a)(1)/MA: Domestic Battery | | 35-42-2-1.3(a)(1) | Finding of Guilty |
| VIII | 35-42-2-1(c)(1)/MA: Battery Resulting in Bodily Injury | | 35-42-2-1(c)(1) | Vacated |

As a result of the above convictions, the Court has sentenced the defendant as follows:

| PART II | SENTENCE | | | | |
|---|---|---|---|---|---|
| **COUNT** | **SENTENCE** | **SUSPENDED** | **CONCURRENT** | **CONSECUTIVE** | **WITH (COUNT OR CASE NUMBERS)** |
| IV | 0 Year(s) and 365 Day(s) | 0 Year(s) and 0 Day(s) | X | | All counts to run concurrent. |
| VII | 0 Year(s) and 365 Day(s) | 0 Year(s) and 0 Day(s) | X | | All counts to run concurrent. |

| COUNT | CONFINEMENT TYPE | CONFINEMENT COMMENTS |
|---|---|---|
| IV | Indiana Department of Correction | 365 days total, 365 days executed to Indiana Department of Corrections (IDOC), credit time for 42 actual and 14 earned days, no days suspended, and no probation. All counts are to run concurrent. Defendant is not to have contact with Candelaria Salazar-Perez for the duration of this sentence. Defendant is to obtain his GED while incarcerated. Defendant is indigent to court costs and orders no fines. |
| VII | Indiana Department of Correction | 365 days total, 365 days executed to Indiana Department of Corrections (IDOC), credit time for 42 actual and 42 earned days, no days suspended, and no probation. All counts are to run concurrent. Defendant is not to have contact with Candelaria Salazar-Perez for the duration of this sentence. Defendant is to obtain his GED while incarcerated. Defendant is indigent to court costs and orders no fines. Defendant is ordered to pay the $50.00 domestic violence countermeasure fee. Court issues a domestic violence determination for this count. |

**The Defendant is to serve this sentence at:  Indiana Department of Corrections**

If the Defendant is being sentenced to the Indiana Department of Correction as a Level 6 offender, the following statutory criteria apply:

☐ IC 35-38-3-3(d)(2) [convicted of a Level 6 felony that was committed in a penal facility]

☐ IC 35-38-3-3(d)(3)(A) [convicted of a Level 6 felony and sentence ordered to be served consecutively to a sentence for another felony; release date is greater than 365 days]

☐ IC 35-38-3-3(d)(3)(B) [convicted of a Level 6 felony that is enhanced by an additional fixed term under IC 35-50-2-8 through -16; release date is greater than 365 days]

☐ IC 35-38-3-3(d)(3)(C) [sentence enhanced under IC 9-30-15.5-2; release date is greater than 365 days]

☐ IC 35-38-3-3(d)(3)(D) [violent offender as defined in IC 35-31.5-2-352(1); release date is greater than 365 days]

☐ IC 35-38-3-3(d)(3)(E) [two (2) prior unrelated felony convictions; release date is greater than 365 days]

| PART III | CREDIT TIME CALCULATION | | |
|---|---|---|---|
| TYPE | | NUMBER OF ACTUAL DAYS CONFINED | CREDIT DAYS EARNED |
| Incarceration *(All Credit Days apply to Case Number 49D07-2404-F3-009320)* | | 42 | 14 |

| PART IV | SENTENCING CONDITIONS | | | | | |
|---|---|---|---|---|---|---|
| CONDITION | DURATION | LOCATION | AMOUNT/COMMENT | EFFECTIVE | END |
| Abstract: Recommended Degree of Security - No Recommendation | | | | 04/17/2025 | |
| Obtain a High School Diploma or GED | | | | 04/17/2025 | |

**The Court is assessing Court Costs and Fees in the amount of $0.00 and a Monetary Award (if applicable) in the amount of .  The authority for this Order and the breakdown of the costs and fees are as follows and are found in Indiana Code, Sections 33-37-4-1, -4 and 33-37-5-19.**

| PART V | MONETARY OBLIGATIONS |
|---|---|
| Court Costs and Fees | |

$0.00
Total:    $0.00

| Restitution |
|---|

In the Amount of .

| Awarded To: | Awarded Against: | Payable Through<br>☐ Marion County Clerk  ☐ Marion County Probation |
|---|---|---|
| Comments: | | |

| PART VI | ADDITIONAL SENTENCING INFORMATION |
|---|---|
| Date to Report for Incarceration<br>04/17/2025 | Additional Comments and Orders |

/S Schneider, Joel - MAG
_____
Schneider, Joel - MAG, Judicial Officer
Marion Superior Court 7

4/17/2025
_____
Date

*Original signature on file with the Court.*